# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| Lemberg Law, LLC, <br><br>     Plaintiff, <br><br>     v. <br><br> Tammy Hussin and Law Office of Tammy Hussin, P.C., <br><br>     Defendants. | No. 3:15-cv-737 (MPS) |

## Ruling on Motion to Transfer

Lemberg Law, LLC ("Lemberg Law"), brings this action against Tammy Hussin ("Hussin") and the Law Office of Tammy Hussin, P.C. ("Hussin Law"), arising out of the breakdown of a business relationship between Lemberg Law and Hussin. Defendants assert counterclaims against Lemberg Law. On January 27, 2016, Defendants filed a motion to transfer this matter to the United States District Court for the Southern District of California under 28 U.S.C. § 1404(a). (ECF No. 52.) Defendants' motion to transfer is granted because, while it was filed nearly eight months after this case was filed, the interests of justice and the convenience of the parties and witnesses support a transfer.

## I.    Background

### A.  Lemberg Law's Complaint

Lemberg Law filed its complaint in this Court on May 15, 2015, alleging the following relevant facts. Lemberg Law and its legal and paralegal staff are located in Stamford, Connecticut. Lemberg Law also employs lawyers located in other states. Sergei Lemberg ("Lemberg") is Lemberg Law's sole member. Hussin, who resides in San Diego, California, began to work as a contract attorney for Lemberg Law in 2011. She handled the firm's cases in California federal courts. (Compl. ¶ 13.) In doing so, Hussin remotely accessed Lemberg Law's

computer system, located in Stamford, for intake purposes and to interface with paralegals.

Attorneys working for Lemberg Law use the firm's name in all court submissions.  Lemberg

Law provides its attorneys with various "practice and state-specific templates, manuals and

proprietary documents that assist its lawyers and staff in handling a large volume of cases."  (*Id.*

at ¶ 24.)  It also distributes a handbook to its attorneys, which states,

> The Firm considers its confidential and proprietary information . . . to be one of
> its most valuable assets.  As a result, employees must carefully protect and must
> not disclose to any third party all confidential and proprietary information
> belonging to the Firm or its clients.
>
> Such protected information includes, but is not limited to . . . matters of legal
> nature, such as computer software, product sources, legal research and templates;
> and matters of a business nature, such as client lists, client contact information . . .
> systems, forms, methods, procedures, and analyses, and other proprietary
> information, whether communicated orally or in documentary, computerized or
> other tangible form, concerning the Firm's or its customers' operations and
> business.

 (*Id.* at ¶ 29.)

In February of 2014, Hussin established her own firm, Hussin Law.  Hussin and Lemberg

Law negotiated a separation agreement, in which Lemberg Law agreed to continue paying

Hussin contract compensation for cases that settled prior to her separation from the firm, and

Hussin agreed "to continue prosecuting under the Lemberg Law name California federal cases

filed by her for Lemberg Law clients."  (*Id.* at ¶ 32.)  Under the agreement, Lemberg Law would

collect 40 percent of the fees generated from those cases, and Hussin was permitted remote use

of Lemberg Law's computer system, restricted to California cases.  Hussin ultimately abandoned

several of her cases, which Lemberg Law eventually assigned to other attorneys.  With respect to

cases that had settled, Hussin directed that payments be made to her, and paid Lemberg Law only

costs, rather than the 40 percent allocation required by the agreement.  During the same time,

Hussin exceeded the agreed-to restrictions on her remote use of Lemberg Law's computer

system by emailing herself client information, pleadings and settlement documents, manuals, memoranda, templates, and a list of process servers compiled by Lemberg Law.  Hussin also marketed herself to former and current Lemberg Law clients.

Lemberg Law's complaint asserts claims of (1) breach of contract, (2) conversion, (3) violation of CUTPA, (4) statutory theft, (5) violation of the Connecticut Uniform Trade Secrets Act, (6) violation of Conn. Gen. Stat. § 53a-251, (7) theft of corporate opportunities, (8) *quantum meruit*, and (9) unjust enrichment.

**B.  Defendants' Affirmative Defenses and Counterclaims**

In their amended answer, Defendants assert three affirmative defenses.  First, they claim that Lemberg Law materially breached the separation agreement by forging Hussin's signature on settlement documents, failing to pay Hussin her agreed-to share of settlements, deducting inappropriate costs before paying Hussin her fee share, inappropriately referring clients to Hussin, refusing litigation support, refusing to cooperate in Hussin's transferring of her files to her own database, "taking back" cases after referring them to Hussin, forcing Hussin to withdraw from a class action suit, failing to inform clients that Hussin no longer worked for Lemberg Law, and falsely telling Hussin that Lemberg Law was no longer seeking clients in California. Second, Defendants assert they are not liable under the doctrine of unclean hands.  Finally, Defendants argue that the contract is unenforceable because it calls for an unlawful division of fees under California law due to the absence of client consent.

Defendants also assert counterclaims of (1) breach of contract, (2) violation of CUTPA, (3) conversion, (4) statutory theft, (5) *quantum meruit*, (6) unjust enrichment, and (7) abuse of

process.  In the amended answer, Defendants allege the following relevant facts.[1]  PrivacyStar is

a "telephone application" associated with MetroPCS, a telephone carrier, that provides

information to telephone users regarding incoming calls.  If a user blocks a caller using

PrivacyStar, the application asks the user whether he or she wishes file a complaint against the

blocked caller with the Federal Trade Commission ("FTC").  At some point, PrivacyStar CEO

Jefferson Stalnaker entered into an agreement with Lemberg, in which PrivacyStar agreed to

provide Lemberg Law with the information of the users who sought to file an FTC complaint

through PrivacyStar.  When Lemberg Law contacted those users, many thought that the Lemberg

Law employee with whom they were speaking was an FTC representative.  Lemberg Law would

then request that the user submit proof of the unwanted call on a website.  When the user

submitted the evidence electronically, a Request for Legal Services would be sent automatically

to Lemberg Law.  The users were unaware that they had requested legal services from Lemberg

Law.  As a result, the user also did not consent to any fee division between Lemberg Law and

Hussin.  Lemberg Law's paralegals would complete a complaint on behalf of the new "client,"

even if the paralegal could not reach the user to confirm the information in the prepared

complaint.  Once completed, the complaints were sent to Hussin for approval.

Hussin was unaware of these practices, but discovered them after she noticed that she

was unable to contact many of her new clients.  Hussin confronted Lemberg about these

practices.  He responded hostilely.  Hussin refused to submit complaints on behalf of clients she

had not been able to contact.  The individuals' relationship grew strained, and Hussin decided to

start her own law firm.  The separation agreement discussed above stated that Hussin would

receive a 20 percent share in the class actions in which the two firms were involved.  In March of

---

[1] In order to avoid redundant recitation, I omit Defendants' allegations providing background information already
mentioned in the section above.  To the extent that any of Defendants' allegations conflict with Lemberg Law's,
they are noted below.

2014, Hussin sought to transfer her files from Lemberg Law's database.  Lemberg required that the transfer be completed by a qualified individual.  When Hussin proposed an IT professional, Lemberg refused.  In the meantime, Hussin began emailing herself documents from Lemberg Law's database.  Lemberg also permitted Hussin to continue to use Lemberg Law's database during this time.

After Lemberg Law's PrivacyStar clients settled their cases, Lemberg Law deducted an unjustified $595 in "costs" from the settlement award.  This resulted in decreased payments to Hussin and the client.  Lemberg Law also began to move Hussin's client case files to other states so that Hussin could not view them.  As a result, Hussin was not made aware of settlements in some of her cases.  In some of these cases, Lemberg Law affixed Hussin's signature to the settlement agreement without her consent.  Lemberg Law also removed some of the cases earlier assigned to Hussin from Lemberg Law's database without paying her, resulting in Hussin's wasted work and time.  Lemberg Law also, at times, paid Hussin less than her agreed-to share of settlement awards.  Lemberg also falsely told Hussin that he was no longer seeking clients in California, and failed to provide Hussin's clients with her contact information when they tried to reach her through Lemberg Law.  Hussin felt it necessary, as a result of these actions, to withdraw from one of the class actions.  Lemberg promised Hussin to pay her the 20 percent as required by their agreement, but has refused to do so.

Hussin then began to prosecute her cases separately from Lemberg Law.  When she achieved a settlement, she paid Lemberg Law its costs only.  Hussin also, at times, provided Lemberg Law with an account of her cases.  When Hussin asked Lemberg Law for an accounting of her cases that Lemberg Law had settled, it refused.

## II.     Discussion

**A.  Legal Standard**

28 U.S.C. § 1404(a) states, "For the convenience of parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  "The burden is on the movant to show why the transfer is warranted."  *Kolko v. Holiday Inns, Inc.*, 672 F. Supp. 713, 715 (S.D.N.Y. 1987).  "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness."  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (internal quotation marks omitted).  "Some of the factors a district court is to consider" in addressing a Section 1404(a) motion are the following:

> (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, [and] (7) the relative means of the parties.

*D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106–07 (2d Cir. 2006) (internal quotation marks omitted).  Courts have also considered "the forum's familiarity with the governing law" and "trial efficiency and the interest of justice, based on the totality of the circumstances."  *Jones v. Walgreen Co.*, 463 F. Supp. 2d 267, 271 (D. Conn. 2006).  "There is no rigid formula for balancing these factors and no single one of them is determinative . . ."  *Two's Co. v. Hudson*, No. 13-cv-3338-NSR, 2014 WL 903035, at *8 (S.D.N.Y. Mar. 6, 2014) (internal quotation marks omitted).

**B.  Whether Venue Would be Proper in the Southern District of California**

Before considering the factors listed above, I must consider whether the Southern District of California is a "district . . . where [this case] might have been brought."  I conclude that it is.

To satisfy this requirement, Defendants must show that the transferee district would have personal jurisdiction over them and that venue would be proper.  *See, e.g.*, *Unlimited Care, Inc. v. Visiting Nurse Ass'n of E. Mass., Inc.*, 42 F. Supp. 2d 327, 333 (S.D.N.Y. 1999) ("A court electing to transfer an action, may only transfer such action 'to a district where it might have been brought initially,' (i.e., a district where defendant is subject to personal jurisdiction and venue would be proper).").  The Southern District of California would have personal jurisdiction over Defendants because Hussin and Hussin Law both reside in that district.  Venue would also be proper in the Southern District of California because it is a district "in which any defendant resides, [and] all defendants are residents of the State in which the district is located."  28 U.S.C. § 1391(b)(1).[2]

Lemberg Law does not dispute that the Southern District of California is a district "where [this case] might have been brought," but insists that Defendants have waived any venue-based challenge by conceding venue in their amended answer.  This argument lacks merit.  Defendants' concessions that venue is "proper" in this Court do not preclude them from moving for convenience-based transfer because a Section 1404(a) movant need not show that the transferor venue is improper in order to obtain a transfer under that provision.  Instead, Section 1404(a) applies to the situation in which venue in the initial forum is proper, but inconvenient.  *See, e.g.*, *Joyner v. Toatley*, No. 85 Civ. 3071 (MJL), 1985 WL 3118, at *1 (S.D.N.Y. Oct. 17, 1985) ("Section 1404(a) allows a federal district court to transfer an action brought in a proper, but inconvenient forum.").  Thus, a defendant does not "waive" her right to seek transfer under Section 1404(a) by conceding that the transferor forum is proper.

This action, therefore, "might have been brought" in the Southern District of California.

---

[2] Defendants also argue that "a substantial part of the events or omissions giving rise to the claim occurred" in that district.  28 U.S.C. § 1391(b)(2).  Because Section 1391(b)(1) provides a basis for proper venue, I need not decide whether Section 1391(b)(2) provides an independent basis for venue in the Southern District of California.

### C.  On Balance, the Interests of Justice and Convenience of Parties and Witnesses Support Transfer

> i.    *Plaintiff's Choice of Forum*

I first consider Lemberg Law's choice of forum, which is "entitled to great weight," and "even more weight when it is the forum in which [the plaintiff] reside[s]."  *Brody v. Am. Med. Ass'n*, 337 F. Supp. 611, 612–613 (S.D.N.Y. 1971).  That is the case here.  Defendants argue, however, that Lemberg Law's choice of forum should be accorded less weight because the locus of operative facts in this case is in California.  *See, e.g.*, *Open Solutions Inc. v. Granite Credit Union*, No. 3:12-cv-1353 (RNC), 2013 WL 5435105, at *4 (D. Conn. Sept. 29, 2013) ("A plaintiff's choice of forum receives less deference . . . when the locus of operative facts is elsewhere."); *800-Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F. Supp. 128, 134 (S.D.N.Y. 1994) ("[A] plaintiff's choice of forum is given less weight where the case's operative facts have little connection with the chosen forum.").  As explained in more detail below (the "locus of operative facts" is a separate factor considered under Section 1404(a)), while it cannot be said that none of the relevant alleged conduct in this case occurred in Connecticut, *cf. Scherillo v. Dun & Bradstreet, Inc.*, 684 F. Supp. 2d 313, 328 (E.D.N.Y. 2010) ("[C]ourts have noted that the weight given to this factor is significantly diminished where none of the operative facts occurred in the forum chosen by plaintiff."), a significant portion of the locus of operative facts in this case occurred in California.  As a result, while I find Lemberg Law's choice of forum holds some weight in this analysis, it is not entitled to "great weight."

> ii.    *Convenience of Witnesses*

Second, I consider the "[c]onvenience of both the party and non-party witnesses[, which] is probably the single-most important factor in the analysis of whether transfer should be granted."  *Horanzy v. Vemma Nutrition Corp.*, 87 F. Supp. 3d 341, 347 (N.D.N.Y. 2015).  "[I]t is

not the number of prospective witnesses that determines the appropriateness of a transfer, but rather, the materiality of their anticipated testimony." *Schwartz v. Marriott Hotel Servs.*, 186 F. Supp. 2d 245, 249 (E.D.N.Y. 2002) (internal quotation marks omitted).  This factor is the one upon which Defendants rely most heavily.  Defendants argue that they anticipate calling many of Hussin's current and former clients, who would testify that they did not sign a Request for Legal Services with Lemberg Law, let alone consent to the fee-division scheme.  This testimony would support Defendants' affirmative defense that the fee-division agreement is unlawful under California law.  All of these clients-witnesses reside in California.  (*See* ECF No. 54, at 6, 8, 10, 12, 14, 15.)  It would be extremely inconvenient for these witnesses to attend a trial in Connecticut, particularly given the substantial distance the client-witnesses would have to travel. *Cf. In re Volkswagen AG*, 371 F.3d 201, 204–05 (5th Cir. 2004) (establishing a "100 mile rule," which states that after that threshold, "the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled").

Defendants have submitted a series of statements from these client-witnesses, each of which asserts that the client was not aware of Lemberg Law's participation in their FTC complaint or that Lemberg Law would deduct costs from their settlement award.  (*See* ECF No. 54.)  Lemberg Law asserts that the client-witness affidavits "are at best highly suspect, and at worst," fraudulent, as there are "serious issues regarding how the affidavits were drafted and obtained."  (Pl.'s Mem. Opp. at 6.)  In support of that assertion, Lemberg Law cites various portions of Hussin's deposition.  Lemberg Law first cites Hussin's statement that in drafting the affidavits, she "had numerous discussions with [her] clients [and] based on the discussions, [she] drafted affidavits . . . [a]nd sent [the draft] to [the clients] in a Word document [s]o that they could make whatever changes or additions that were necessary."  (ECF No. 71-1, at 145.)

Second, when asked "[i]n being the one who drafted the affidavit for [a client], did you explain to her that maybe you want to put in the affidavit that you may very well have signed a request for legal services before I started working on your complaint?" Hussin replied that the question was "not relevant." (*Id.* at 164.) Third, when asked, "[y]ou don't think it's relevant that they signed a request for legal services?" Hussin responded, "[t]hey don't remember seeing or signing. They don't remember." (*Id.* at 165.) Fourth, Hussin admitted that the affidavits do not state that they were drafted by Hussin. (*Id.*) Finally, Hussin admitted that the affidavits do not state that the client "may have signed an e-request for legal services, . . . but [the client may] not [have been] sure [he or she] understood when [he or she] signed it." (*Id.* at 166.)

Based on Hussin's deposition alone, the Court cannot evaluate Lemberg Law's claim regarding the veracity of the client-witnesses' affidavits. Lemberg Law's objections cannot be resolved without further evidentiary development, such as deposing the client-witnesses themselves or holding an evidentiary hearing. There is no indication in the record before the Court that Lemberg Law has attempted to depose these client-witnesses. The Court is therefore not in a position to question the veracity of the statements without further evidence supporting Lemberg Law's contention that they are improper. To carry weight under this factor, Defendants need only "specify the key witnesses to be called and make a general statement of what their testimony will cover." *Hawley v. Accor North Am., Inc.*, 552 F. Supp. 2d 256, 259 (D. Conn. 2008).[3] Defendants have satisfied that requirement, and have demonstrated that witnesses providing material testimony in this case would be significantly inconvenienced by a trial in this district.

---

[3] Lemberg Law also argues that these client-witnesses lack testimonial capacity because they have no personal knowledge of the contract at issue in this case. I disagree. Each client-witness would have personal knowledge as to whether he or she was aware of Lemberg Law's involvement in his or her case before the FTC, which is relevant to Defendants' affirmative defense that the fee-splitting provisions of the contract between Hussin and Lemberg Law are legally unenforceable.

Lemberg Law responds that its witnesses would be inconvenienced by a trial in California, stating, "[a]lmost all of the relevant witnesses in this case, including Lemberg's principal (Sergei Lemberg), Lemberg's employees and Lemberg's expert, reside in Connecticut." (Pl.'s Opp. Mem. at 6.)  The "convenience of witnesses" factor in this analysis, however, gives more weight to the inconvenience to non-party witnesses than party witnesses. *See, e.g.*, *Mastr Asset Backed Secs. Trust 2007-WMC1, ex rel. U.S. Bank Nat. Ass'n v. WMC Mortg. LLC*, 880 F. Supp. 2d 418, 422 (S.D.N.Y. 2012) ("Generally, the convenience of non-party witnesses is accorded more weight than that of party witnesses." (internal quotation marks omitted)); *ESPN, Inc. v. Quiksilver, Inc.*, 581 F. Supp. 2d 542, 547 (S.D.N.Y. 2008) ("[T]he convenience of non-party witnesses is accorded more weight than that of party witnesses." (internal quotation marks omitted)); *see also Mitel Networks Corp. v. Facebook, Inc.*, 943 F. Supp. 2d 463, 473 (D. Del. 2013) ("[P]arty witnesses or witnesses who are employed by a party carry no weight in the 'balance of convenience' analysis as each party is able, indeed, obligated to procure the attendance of its own employees for trial." (internal quotation marks omitted")).  With respect to its "expert," Lemberg Law fails to provide any information about the expert's testimony, let alone whether it would be material in this case.  Even assuming the expert's testimony would be material, "[i]t has been repeatedly held by courts that the convenience of expert witnesses is of little or no significance on a motion to transfer." *Dwyer v. General Motors Corp.*, 853 F. Supp. 690, 693 (S.D.N.Y. 1994) (internal quotation marks omitted).

Finally, Lemberg Law argues that any inconvenience can be mitigated by Defendants' presenting the client-witnesses' testimony at trial through deposition.  While this is a possibility, courts addressing the witness-convenience issue have noted a preference for live testimony. *E.g.*, *In re E. Dist. Repetitive Stress Injury Litig.*, 850 F. Supp. 188, 194 (E.D.N.Y. 1994)

("Depositions, . . . even when videotaped, are no substitute for live testimony."); *Open Solutions, Inc.*, 2013 WL 5435105, at *3 n.3 (same, considering the "expense involved, and because counsel would be unable to sharpen their questioning at trial"). If depositions were acceptable as an equal substitute for live testimony, the convenience of witnesses would not be "the most important" factor in the Section 1404(a) analysis; the party opposing transfer could always neutralize this factor by pointing to the option of presenting deposition testimony.

The convenience of witnesses, particularly Defendants' non-party witnesses, weighs heavily in favor of transferring this case to the Southern District of California.

### iii.    Location of Documents

Third, I consider the location of relevant documents and relative ease of access to sources of proof. The parties agree that this factor is neutral, considering the modern ease of access to relevant documents by electronic means. *See, e.g.*, *Charter Oak Fire Ins. Co.*, 294 F. Supp. 2d 218, 211 (D. Conn. 2003) ("Although the location of relevant documents is entitled to some weight, modern photocopying technology and electronic storage deprive this issue of practical or legal weight."). This factor therefore weighs in neither party's favor.

### iv.    Convenience of Parties

The fourth factor addresses the convenience of the parties. Defendants again raise the inconvenience of their witnesses under this factor. (Defs.' Mem. at 7 ("The great inconvenience here would come to Hussin's clients who will be called on to testify and support her in whatever way they can.").) This argument, however, does not address Defendants' convenience as a *party*; it simply repeats the argument they assert under the witness-convenience factor. In fact, Defendants concede that this factor is neutral, stating, "although Connecticut is an inconvenient

12

forum for Hussin, it would be just as inconvenient for Lemberg to go to California." (*Id.*) This factor is therefore neutral.

> v.     *Location of Locus of Operative Facts*

Next, I consider the location of the locus of operative facts in this case. While some of the relevant facts in this case occurred in Connecticut, the majority occurred in California. The servers from which Defendants allegedly took Lemberg Law's property are located in Connecticut, and Lemberg Law's offices – and its paralegals, including Hussin's paralegal while she worked for Lemberg Law – are located in Connecticut. Nonetheless, the contract at issue focused exclusively on California-based litigation, the clients – whose knowledge is highly relevant to Defendants' unenforceability defense – were all located in California, Defendants' counterclaims regarding Lemberg Law's failure to pay Hussin's share of settlements concern California litigation, and Hussin's alleged inappropriate access of the Connecticut servers occurred from her office in California. On balance, the locus of the major portion of the operative facts in this case, considering Lemberg Law's and Defendants' respective claims, is California rather than Connecticut.

> vi.    *Scope of The Court's Compulsory Power*

Sixth, Defendants argue that their California-based client-witnesses lie outside the scope of this Court's power to compel attendance at trial. It is true that this Court would not be able to issue a subpoena commanding that the client-witnesses appear at trial in Connecticut. *See* Fed. R. Civ. P. 45(c)(1) ("A subpoena may command a person to attend a trial, hearing, or deposition only . . . within 100 miles of where the person resides . . ."). And as stated, courts prefer live testimony over the presentation of a deposition at trial. Defendants, however, have indicated that only one client-witness is unwilling to testify, although they have also suggested that they would

have to arrange for travel for the California-based witnesses and that this would be a prohibitive economic hardship.  While it is not clear that this client-witness's testimony is particularly important in comparison to other client-witnesses, considering the likely prohibitive cost of travel for these client-witnesses, this factor weighs at least somewhat in favor of transfer.

### vii.    Relative Means of the Parties

With respect to the relative means of the parties, Defendants assert – and Lemberg Law does not dispute – that Lemberg Law possesses significantly greater resources than Defendants. In their memorandum, Defendants point to Lemberg Law's website, which states that it has recovered "more than $35 million" for clients.  (Defs.' Mem. at 9.)  In comparison, Defendants assert that Hussin is a "sole proprietor, now spending most of her disposable income and time in defending this litigation."  (*Id.*)  Despite Defendants' arguments on this point, and even though case law expressly identifies the relative means of the parties as a relevant factor under Section 1404(a), Lemberg Law fails to respond to Defendants' arguments.[4]  Without a response from Lemberg Law on this factor, the Court must conclude that it weighs in favor of transfer.

### viii.    Familiarity with Governing Law

The Court's familiarity with the law governing the claims in this case weighs against transferring the case.  Both parties' pleadings refer to Connecticut law, which supports denying the transfer motion.[5]  *See, e.g.*, *Costello v. Home Depot USA, Inc.*, 888 F. Supp. 2d 258, 267 (D. Conn. 2012) ("District courts are presumed to be more familiar with the law of the state in which

---

[4] In its memorandum in opposition, Lemberg Law identifies "Financial Means of the Parties" in one of its sub-headings, but fails to actually discuss the factor in that section.  (Pl.'s Mem. Opp. at 10–11.)

[5] It is not clear, however, whether Connecticut law would govern the parties' common law claims.  Based on the parties' pleadings, the contract at issue concerned conduct that was to occur at least in part in California. Connecticut's choice of law rules look to Section 145 of the Restatement (Second) of Conflict of Laws, which weighs the foras' relationships to the action, including the relative interests of the states in determining the issue. *See, e.g.*, *O'Connor v. O'Connor*, 201 Conn. 632, 650–51 (1986).  Thus, it is at least debatable whether Connecticut or California law would govern the parties' common law claims.

they sit."). It is worth noting, however, that one of Defendants' affirmative defenses involves the application of California law in that it asserts the contract at issue in this case is unlawful under California law. As a result, this factor weighs against transfer, but not significantly.

ix.    *Trial Efficiency and Interests of Justice*

Finally, considering trial efficiency and the interests of justice, Defendants' delay in filing this motion weighs against transfer, but not significantly. While a Section 1404(a) motion may be brought at any time, Defendants filed this motion almost eight months after Lemberg Law filed the suit. As an initial matter, I find Defendants' justification for the delay unconvincing. In a statement filed with the Court, Defendants assert that Hussin did not consider seeking a transfer at the early stages of the case because the parties engaged in settlement negotiations soon after this case commenced. According to Defendants, "[i]t was not until November [2015], when the settlement felt apart, that [Hussin] started to prepare this matter for trial." (ECF No. 86, at ¶ 6.) While Defendants assert that Hussin only realized, upon preparing her defense, that "this case presents important legal and ethical issues which hinge on the application of California laws and the California Rules of Professional Conduct" (*id.* at ¶ 8), they provide no reason why Hussin could not have discovered this fact in May of 2015, when Lemberg Law first filed the lawsuit. *Cf. Flood v. Rite Aid of N.J., Inc.*, No. 84 Civ. 6502 (CBM), 1986 WL 2965, at *3 (S.D.N.Y. Mar. 4, 1986) ("The alleged convenience of trying this action in New Jersey should have been apparent at the very beginning of this case to defendant, yet it chose not to act until the eleventh hour.").

Nonetheless, "it is clear that there is no per se rule prohibiting a change of venue merely because a motion to transfer is filed some time after suit is commenced and some progress is made on the pre-trial phase of the case." *Essex Crane Rental Corp. v. Vic Kirsch Const. Co.,*

*Inc.*, 486 F. Supp. 529, 535 (S.D.N.Y. 1980). The factors normally supporting denial of a Section 1404(a) motion due to delay do not exist in this case. In considering a delayed transfer motion, courts have looked primarily to the status of the litigation and whether "the non-movant would be prejudiced by a transfer." *U.S. Fidelity & Guar. Co. v. Republic Drug Co., Inc.*, 800 F. Supp. 1076, 1083 (E.D.N.Y. 1992). Lemberg Law has failed to show how it would be prejudiced by a transfer at this stage. *See Essex Crane Rental Corp.*, 486 F. Supp. at 535 ("Although plaintiff is correct in arguing that delay in moving to change venue can be a factor justifying a denial of such application, plaintiff has failed to show how it will be prejudiced by having to litigate elsewhere." (citation omitted)). Instead, it argues that this Court "has already addressed some of the amendments to the counterclaims," and that additional issues are pending before this Court.[6] (Def.'s Opp. Mem. at 10.) While the Court has reviewed the parties' submissions regarding pending matters, the Court has not devoted significant time and resources to this case, unlike courts that have denied Section 1404(a) motions because they were brought too late. *See, e.g.*, *In re Manville Forest Prods. Corp.*, 896 F.2d 1384, 1391 (2d Cir. 1990) (affirming denial of transfer motion because "the bankruptcy court had developed a substantial 'learning curve' "). The Court has not yet ruled on any dispositive motions in this case, and the case has not been scheduled for trial. *See, e.g.*, *Sylvestre v. Oswald*, No. 91 Civ. 5060 (JSM), 1993 WL 426527, at *1 (S.D.N.Y. Oct. 19, 1993) (denying transfer because of delay, noting "[t]his court has twice set what is a firm trial date" and "trial is due to begin in less than three weeks in this district"). Further, the circumstances of this case do not suggest that Defendants' delay in moving for transfer was a dilatory tactic, *see, e.g.*, *In re New York Trap Rock Corp.*, 158

---

[6] The parties have presented the Court with multiple discovery disputes and Lemberg Law has filed a motion to strike portions of the Defendants' amended answer. Those issues are pending before the Court. Lemberg Law also filed a motion to dismiss Defendants' amended answer, but the Court stayed further briefing on the motion until the Court issued a ruling on Defendants' motion to transfer. (*See* ECF No. 68.)

B.R. 574, 577 (S.D.N.Y. 1993) ("Delay for tactical reasons . . . can be grounds for denying such an application."), or otherwise done in bad faith.  As a result, while the delayed nature of this motion weighs against transferring the matter, it does not do so heavily.

**III.    <u>Conclusion</u>**

On balance, despite Defendants' delay in filing this motion, given the serious inconvenience that a Connecticut trial would impose on material non-party witnesses, the significant difference in the relative means of the parties, and the fact that Lemberg Law has failed to show that prejudice would result from a transfer at this stage in litigation, transferring this case to the Southern District of California is in the interest of justice and supports the convenience of the parties and witnesses.  As a result, Defendants' motion to transfer under 28 U.S.C. § 1404(a) is GRANTED.  The Clerk is directed to transfer this case to the United States District Court for the Southern District of California.


IT IS SO ORDERED.

                                                    /s/
                                          Michael P. Shea, U.S.D.J.


Dated:        Hartford, Connecticut
              April 26, 2016

17