## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| Lemberg Law LLC,<br><br>                    Plaintiff,<br><br>          v.<br><br>Tammy Hussin, Law Office of Tammy Hussin P.C. d/b/a Hussin Law,<br><br>                    Defendants. | :<br>:  Civil Action No.: 3:15-CV-00737-MPS/16-<br>:  CV-01727-L-WVG<br>:<br>:<br>:<br>:  July 7, 2016<br>:<br>:<br>: |

## PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION

Plaintiff, Lemberg Law LLC ("Lemberg Law"), hereby respectfully submits this Reply in Support of its Motion to Compel Arbitration and/or Alternative Dispute Resolution.  Lemberg Law moves this Court for an order (1) staying all pending motions and proceedings; and (2) directing the parties to arbitration and/or other alternative dispute resolution.

The Complaint in this case asserts that Tammy Hussin, a member of the Southern District of California Bar,[1] and her firm, Law Office of Tammy Hussin P.C. d/b/a Hussin Law, breached an agreement with Lemberg Law by failing to pay a negotiated portion of fees on cases inherited from the firm.  The Complaint also seeks recovery for the value of intellectual property and client lists that Hussin took from the firm without permission.

After the First Amended Answer and Counterclaim were struck by Judge Shea pursuant to Rule 11, Defendants re-pled with a Second Amended Answer and Counterclaim (Doc. No. 48), asserting claims against Lemberg Law and accusing the firm and its principal of all kinds of

---

[1] This Reply is filed in the District of Connecticut because the case was transferred just two (2) days before the reply deadline and Plaintiff has not yet had the opportunity to obtain California counsel or file a *pro hac vice* motion.

ethical wrongdoing.[2]  That pleading remains subject to a motion to strike and dismiss, and all allegations of ethical impropriety have been conclusively adjudicated in Mr. Lemberg's favor by the Office of Disciplinary Counsel for the State of Connecticut. (Doc. No. 123).

Lemberg Law has now moved to compel arbitration pursuant to the parties' agreement (the "Agreement"), which Ms. Hussin wrote and pursuant to which she and her firm received more than $200,000.00.  The Agreement clearly and unequivocally encompasses the present dispute, and Defendants have failed to show waiver of the contractual right to arbitrate.

Arbitration must also be ordered because Ms. Hussin is litigating the case for an improper purpose.  Uncontroverted evidence in this case shows that Ms. Hussin had set up an escrow account entitled "Lemberg Escrow" to hold disputed fees for Lemberg Law's benefit, but then used the money to pay her taxes. (Doc. No. 101-2 at pp. 225-226).[3]  In addition, neither

---

[2]  California Rule of Professional Conduct 5-100 (Threatening Criminal, Administrative, or Disciplinary Charges)

(A) A member shall not threaten to present criminal, administrative, or disciplinary charges to obtain an advantage in a civil dispute.

(B) As used in paragraph (A) of this rule, the term "administrative charges" means the filing or lodging of a complaint with a federal, state, or local governmental entity which may order or recommend the loss or suspension of a license, or may impose or recommend the imposition of a fine, pecuniary sanction, or other sanction of a quasi-criminal nature but does not include filing charges with an administrative entity required by law as a condition precedent to maintaining a civil action.

(C) As used in paragraph (A) of this rule, the term "civil dispute" means a controversy or potential controversy over the rights and duties of two or more parties under civil law, whether or not an action has been commenced, and includes an administrative proceeding of a quasi-civil nature pending before a federal, state, or local governmental entity.

[3] Ms. Hussin testified as follows:

Q.    So you didn't take all the money out and deposit it into the Schwab account?
A.    I think that I did and, thereafter, used it to pay taxes on that income, because I had to declare it as income if we weren't going to settle it.

(Doc. No. 101-2 at pp. 225-226).

Defendant disclosed any damages before the case was transferred, and as Ms. Hussin herself has stated:

> This law suit [sic] is embarrassing for both Lemberg and I, and it undoubtedly has caused harm to both of our reputations. However, Lemberg chose to make our disputes a matter of public record, and it is he who chose to continue this litigation knowing my responsive pleading would be replete with harsh allegations. Although I would like to see every pleading in this disgusting mess sealed forever, Lemberg cannot not now try to undo what is left in the wake of his conscious decision to wage a public war.

(Doc. No. 89 at p. 3).  And again: "Lemberg purposely availed himself to [sic] this litigation, and cannot now try to escape the wrath he himself created." (Doc. No. 120 at p. 6).  No useful purpose would be served by allowing Defendants to wage a "public war" in this Court.  This is not what court proceedings are for.

## BACKGROUND

### A. Issues in this Case Have Not Joined and No Decisions Have Been Made

Without question, this case has been in litigation for more than a year and discovery has taken place, but no judicial decisions have been rendered and no prejudice to Defendants has accrued.  Lemberg Law sued Ms. Hussin and Hussin Law on May 15, 2015. (Doc. No. 1).  The Complaint alleges that Defendants breached a contract that required them to pay Lemberg Law legal fees accruing on case inherited by Defendants. (Doc. No. 1 at ¶¶ 52-53).  According to records produced in discovery, at the time Ms. Hussin started her firm she inherited Lemberg Law California cases then existing in Lemberg Law's system.  The vast majority of those cases had been opened in 2013, at or before the time the parties negotiated the Agreement at issue here.   The cases at issue are listed on Exhibit 1 to the Supplemental Declaration of Sergei Lemberg.  Each case was opened prior to Ms. Hussin's separation from the firm in June 2014.

The Complaint also asserts that Hussin converted various proprietary documents and

- 3 -

client lists, and pleads violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), civil theft in violation of C.G.S. § 52-564, violation of the Connecticut Uniform Trade Secrets Act ("CUTSA"), C.G.S. § 35-50, a computer crime in violation of C.G.S. § 53a-251, theft of corporate opportunities, *quantum meruit*, and unjust enrichment.

Defendants appeared through counsel over a year ago, on July 2, 2015 (Doc. No. 9), immediately asking for a 30-day extension of the time to plead. (Doc. No. 10).   In August, Defendants asked for another extension to plead until September 18, 2015. (Doc. No. 17).   On August 28, 2015, the court entered the Scheduling Order, and on September 18, 2015 – nearly three (3) months after the first appearance – Defendants finally answered. (Doc. No. 27).   On November 12, 2015, Defendants filed their Amended Answer and Counterclaim (Doc. No. 32). The First Amended Counterclaim included many irrelevant, impertinent, scandalous, immaterial and expressly confidential allegations. Lemberg Law filed its Motion to Dismiss or Strike portions of the First Amended Counterclaim on December 17, 2015.   In response, on December 18, 2015, the Court ordered Defendants to re-plead consistent with Rule 11.   In an attempt to comply with the Court's Order, Defendants filed the Second Amended Counterclaim (Doc. No. 48) on January 7, 2016.   Thus, from the perspective of pleadings, all of 2015 was taken up by Defendants to formulate and file an Answer and Counterclaim in this case.   On January 29, 2016, Lemberg Law renewed its Motion to Strike and Motion to Dismiss Portions of Defendants' Second Amended Answer, Affirmative Defenses and Counterclaims (the "Motion to Dismiss") (Doc. No. 57).   The Motion to Dismiss has been pending ever since.

On January 27, 2016, Defendants moved to transfer the case (Doc. No. 52).   In granting the motion, Judge Shea observed that no decisions have been made and the case has not been set for trial:

- 4 -

> While the Court has reviewed the parties' submissions regarding pending matters, the Court has not devoted significant time and resources to this case, unlike courts that have denied Section 1404(a) motions because they were brought too late. See, e.g., In re Manville Forest Prods. Corp., 896 F.2d 1384, 1391 (2d Cir. 1990) (affirming denial of transfer motion because "the bankruptcy court had developed a substantial 'learning curve' "). The Court has not yet ruled on any dispositive motions in this case, and the case has not been scheduled for trial . . .

(Doc. No. 97 at p. 15).  On July 5, 2016, the case was transferred to this Court. (Doc. No. 124).

The primary reason for transfer was for convenience of Ms. Hussin's witnesses who she claims "unknowingly entered into an attorney-client relationship with Lemberg." (Doc. No. 53 at p. 5).  The agreements between these witnesses and Lemberg Law also contain arbitration clauses, so any disputes they may have with the firm must also be arbitrated. (Doc. No. 101-7).

### B. Ordinary Discovery Ensued

While the Motion to Dismiss was pending, the parties engaged in discovery.  Lemberg Law served written discovery on Defendants, which Defendants answered.  Defendants propounded 221 requests for admissions, 84 document requests, and 25 interrogatories to Lemberg Law.  Those were answered too.

One deposition was taken – of Ms. Hussin on January 28, 2016.  Defendants had originally scheduled, but ultimately decided not to take, Sergei Lemberg's deposition.  In addition, one discovery dispute arose and the parties submitted discovery letters to the Court.[4]

---

[4] Although Defendants suggest that Plaintiff somehow made discovery more difficult than needed, on February 12, 2016 the parties filed a motion to extend the discovery deadline to May 1, 2016. (Doc. No. 69) and stated to the court:

> Although issues have not joined, the parties continue to pursue discovery aggressively….Additionally, the parties are diligently working through numerous discovery objections. As a result, the parties will not be able to complete party, expert and third-party witness depositions by the March 1, 2016 discovery deadline.

That dispute remains pending.

Pursuant to the schedule set by the court, on April 15, 2016 Lemberg Law served Defendants with a report by expert witness Stephen Shulman.  Defendants did not disclose an expert witness, did not designate a rebuttal expert, and have not sought to depose Mr. Shulman.

Thereafter, consistent with the Local Rules for the District of Connecticut, Lemberg Law provided Defendants with a full and complete damages analysis on April 14, 2016.  Based on Mr. Shulman's expert report, Lemberg Law is seeking damages of $499,130.87. (Doc. No. 101-4).  Defendants failed to serve a damages analysis consistent with the Local Rules and therefore do not appear to be seeking damages of any kind. *See Design Strategy, Inc. v. Davis*, 469 F.3d 284, 293 (2d Cir. 2006) (failure to provide a damages analysis under Civ. P. 26(a)(1)(c) results in the preclusion of evidence of damages)**.**

Thus, the parties have finished written and expert discovery, and took one deposition.  No disposition on any motion regarding the merits of the action has been made, and no discovery disputes were adjudicated by the Court.

## DISCUSSION

### A.  An Agreement to Arbitrate Exists

Lemberg Law has established that Defendants must arbitrate all disputes pursuant to the agreement that Ms. Hussin herself authored.  "The standard for demonstrating arbitrability is not high." *McNamara v. Royal Bank of Scotland Grp., PLC*, 2012 WL 5392181, at *2-3 (S.D. Cal., Nov. 5, 2012).  The district court can only determine whether an agreement to arbitrate exists, and if so, to enforce it in accordance with its terms. *Id.* (citing *Howard Elec. & Mech. v. Briscoe Co.,* 754 F.2d 847, 849 (9th Cir. 1985)).  In other words, the Federal Arbitration Act "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts

*shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 218, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985) (emphasis in original).  As Judge Lorenz summarized in *McNamara*:

> To determine whether parties have agreed to arbitrate a dispute, courts apply general state-law principles of contract interpretation. *Mundi v. Union Sec. Life Ins. Co.,* 555 F.3d 1042, 1044 (9th Cir.2009). Once an agreement to arbitrate is found to exist, "[the FAA] establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp.,* 460 U.S. at 24–25; *see also Quakenbush v. Allstate Ins. Co.,* 121 F.3d 1372, 1380 (9th Cir.1997).  Enforcement of an arbitration agreement "should not be denied unless it can be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT & T Tech., Inc. v. Commc'n Workers,* 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986); *see also United Food and Comm. Workers Union v. Geldin Meat Co.,* 13 F.3d 1365, 1368 (9th Cir.1993) ("Doubts should be resolved in favor of coverage."). Thus, to determine whether this case must be submitted to arbitration, the Court must limit its inquiry to: (1) whether a valid agreement to arbitrate exists, and if it does, (2) whether the dispute falls within the scope of the agreement to arbitrate. *See Chiron Corp. v. Ortho Diagnostic Sys.,* 207 F.3d 1126, 1130 (9th Cir.2000).

2012 WL 5392181, at *2-3.

Here, there is no question that the agreement to arbitrate exists and must be enforced in accordance with its terms.  Ms. Hussin herself wrote the Agreement, which includes an all-encompassing agreement to arbitrate that says: "12. Any controversy or claim arising out of or relating to this agreement shall be settled by Mark Dubois." (Doc. No. 110-1).  Ms. Hussin admits she authored the arbitration agreement: "The paragraph relating to Dubois was just an afterthought of mine, and I threw it into the Memorandum at the last minute." (Doc. No. 120 at p. 9).

In her pleadings, Ms. Hussin references the parties' agreement for the division of money. *See* Complaint (Doc. No. 1) at ¶ 31-35; Amended Answer and Counterclaim (Doc. No. 32) at ¶

31-35 and First Affirmative Defense.  The validity of the Agreement is further confirmed by Defendants' Interrogatory Responses. (Doc. No. 110-3 at Nos. 12 & 13).

The Agreement is all-encompassing.  In the cover email that contained the Agreement Ms. Hussin wrote: "Sorry for the delay. I think this covers everything." (Doc. No. 110-1).  In addition, the Agreement and preceding emails were produced in this litigation by Defendants under the following cover: "**Agreement and Breach**." (Doc. No. 110-1).  Thus, since the Agreement exists, it must be enforced according to its terms and arbitration must be compelled.

### B. The Argument that the Agreement Does not Cover the Dispute is Meritless

Defendants do <u>not</u> contest the existence of the arbitration agreement, nor do they argue that it does not mean what it says.  Rather, they argue that that the arbitration clause ended at the time Ms. Hussin's affiliation with Lemberg Law ended:

> The Memorandum was drafted at a time when Hussin and Lemberg intended to continue their affiliation, and the terms of the Memorandum specifically contemplate an ongoing affiliation."  See, Declaration of Tammy Hussin in Opposition to the Motion to Compel Arbitration ("Hussin Dec."), attached hereto as Exhibit A and incorporated herein by this reference. At the time Hussin drafted and sent the Memorandum to Lemberg, she was still associated with Lemberg's firm, and the Memorandum was based on the notion that the affiliation would continue. Id. "When Lemberg decided in February of 2014 that Hussin's affiliation with his firm had ended, the terms of the Memorandum ended as well.

(Doc. No. 120 at p. 2).  Paragraph 12 of Hussin's accompanying affidavit pegs the end date of the Agreement at June 2014. *Id.* at pp. 9-10.  Either way, the reasoning goes, the Agreement ended and so did the arbitration clause.  But these are not the facts, and this is not the law.

First, the affirmative claims in this case, as well as Defendants' counterclaims and defenses, directly relate to the time when Hussin was affiliated with the firm and was using its systems and servicing its clients:

- 8 -

3. This agreement applies to all California cases, irrespective of whether the matter is resolved pre-litigation and/or is settled by someone other than Hussin. In the event Hussin is the responsible attorney on any matters in Colorado, the terms of this agreement shall apply.

4. For all cases which existed in the system prior to October 1, 2013, the fee shall be divided 60% Lemberg and 40% Hussin, net of actual costs (except Norton shall be 50/50).

5. For all cases put into the system on or after October 1, 2013, the fee shall be divided 50% Lemberg and 50% Hussin, net of actual costs.

6. For all California class action cases currently in the system or hereinafter filed, the fee shall be divided 80% Lemberg and 20% Hussin, net of actual costs.

It is those claims that are at issue in this case, and it is therefore beyond peradventure that the Agreement, drafted by Ms. Hussin, governed the division of money between the parties for cases she was handling for the firm. Defendants received more than $200,000.00 under the Agreement following its execution, debunking any notion that the Agreement covered the past rather than the future.

Moreover, the accompanying emails show that the Agreement contemplated an ongoing relationship for the division of legal fees that applied to "any matters in the prolaw system prior to the date of termination of this agreement." [5] (Doc. No. 110-1). Ms. Hussin says that her disputes with Lemberg Law arose in February or June 2014. (Doc. No. 120 at pp. 9-10). As the Court can easily discern from the Open Dates of the cases at issue listed in Exhibit 1, all of them had been entered into Lemberg Law's system prior to that date, putting the dispute squarely within Clauses 3-5 of the Agreement. Because the Agreement clearly contemplated Ms. Hussin's continued use of Lemberg Law's computer systems and staff, the theft of intellectual property claims from it as well.

Second, even assuming that the Agreement somehow ended, the arbitration clause still governs. "[T]he well settled jurisprudence that holds arbitration agreements to a life and validity separate and apart from the agreement in which they are embedded." *Tech. & Intellectual Prop.*

---

[5] ProLaw is Lemberg Law's case management system.

*Strategies Grp. PC v. Insperity, Inc.*, 2012 WL 6001098, at \*14 (N.D. Cal., Nov. 29, 2012);  *see also Homestake Lead Co. of Missouri v. Doe Run Resources Corp.*, 282 F.Supp.2d 1131, 1136-37 (N.D. Cal. 2003).   Indeed, the Supreme Court has determined that parties' duties under an arbitration clause survive contract termination when the dispute is over an obligation arguably created by the expired contract. *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 554-55, 84 S. Ct. 909, 11 L.Ed.2d 898 (1964).   Subsequently, the Court confirmed this principle and clarified its position that "where the dispute is over a provision of the expired agreement, the presumptions favoring arbitrability must be negated expressly or by clear implication." *Nolde Bros., Inc. v. Local No. 358, Bakery & Confectionery Workers Union*, 430 U.S. 243, 255, 97 S. Ct. 1067, 51 L.Ed.2d 300 (1977).   In *Nolde*, "there was nothing in the arbitration clause that expressly excluded from its operation a dispute arising under the contract but based upon events occurring after its termination." *Id.* at 253, 97 S.Ct. 1067.   Here, the clause in question similarly creates a duty to arbitrate that applies to any disputes or difference arising out of or in connection with the Agreement.

   Third, Ms. Hussin fails to overcome the presumption of arbitrability.   The arbitration clause at issue here creates a presumption of arbitrability that "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute*." Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1284 (9th Cir. 2009).   Without an express provision excluding the issue from arbitration, "only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *Peters v. Amazon Servs. LLC*, 2 F. Supp. 3d 1165, 1172-73 (W.D. Wash. 2013) (internal citations omitted).   There is no such forceful evidence here, and in fact there is no evidence at all before the Court that shows that some subsequent agreement between the parties that excluded the

- 10 -

claims from arbitration exists.  Instead, the only evidence is that the contractual dispute at issue here is governed by the Agreement.

Finally, even if there are doubts – and there are none – as to the coverage of the arbitration clause, they must be resolved in favor of arbitration. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25, 103 S. Ct. 927, 74 L.Ed.2d 765 (1983).; *see also Quakenbush v. Allstate Ins. Co.*, 121 F.3d 1372, 1380 (9th Cir. 1997).  Courts confronted with a dispute between parties subject to arbitration must "construe arbitration clauses as broadly as possible." *S.A. Mineracao de Tridade–Samitri v. Utah Int'l. Inc.*, 745 F.2d 190, 194 (2d Cir. 1984).  Enforcement of an arbitration agreement "should not be denied unless it can be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Tech., Inc. v. Commc'n Workers*, 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986); *see also United Food and Comm. Workers Union v. Geldin Meat Co.*, 13 F.3d 1365, 1368 (9th Cir. 1993) ("Doubts should be resolved in favor of coverage.").

The most reasonable interpretation of the Agreement is that it requires arbitration of all disputes.  The Ninth Circuit has specifically interpreted the language Hussin chose, "any controversy or claim arising out of or relating to," when used in an arbitration clause, to indicate that the scope of an arbitration clause is "broad and far reaching." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000).   In other words, there is a presumption of arbitrability where, as here, the arbitration clause is broad and refers to arbitration of "any controversy or claim." *See Carney v. Verizon Wireless Telecom, Inc.*, 2011 WL 3475368 (S.D. Cal., Aug. 9, 2011); *see also Nemec v. Linebarger*, 2014 WL 6847342, at *6 (N.D. Cal., Dec. 4, 2014) (compelling arbitration where the "claims were committed to

arbitration by the language to which both sides in this dispute freely agreed.").  The claims here fall squarely within the scope of the broad arbitration clause drafted by Ms. Hussin.

C.  **Lemberg Law Did Not Waive its Right to Arbitrate**

Ms. Hussin says that Lemberg Law waived its right to arbitrate because (1) too much time has passed in this litigation; and (2) Defendants were prejudiced by the litigation.  Although litigation happened here, waiver did not. "The right to arbitration, like any other contract right, can be waived." *U.S. v. Park Place Assocs., Ltd.*, 563 F.3d 907, 921 (9th Cir. 2009).  However, "[a]ny examination of whether the right to compel arbitration has been waived must be conducted in light of the strong federal policy favoring enforcement of arbitration agreements." *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 694 (9th Cir. 1986).  Indeed, the Ninth Circuit has emphasized that "waiver of the right to arbitration is disfavored because it is a contractual right, and thus 'any party arguing waiver of arbitration bears a heavy burden of proof.'" *Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 758 (9th Cir. 1988) (citation omitted).

When determining whether arbitration is appropriate, this Court considers the *Saint Agnes* factors: (1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether the litigation machinery has been substantially invoked and the parties were well into preparation of a lawsuit before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) whether important intervening steps, e.g., taking advantage of judicial discovery procedures not available in arbitration had taken place; and (6) whether the delay affected, misled, or prejudiced the opposing party. *See*

*McNamara v. Royal Bank of Scotland*, 2012 WL 5392181, at \*4 (*quoting Saint Agnes Med. Ctr.*, 31 Cal.4th 1187, 1196 (2003)).

"[W]aiver does not occur by mere participation in litigation; there must be 'judicial *litigation* of the merits of arbitrable issues,' although 'waiver could occur prior to a judgment on the merits if prejudice could be demonstrated.'" *Christensen v. Dewor Devs.,* 33 Cal.3d 778, 782, 191 Cal.Rptr. 8, 661 P.2d 1088 (1983) (emphasis in original) (internal quotation and citation omitted). "Prejudice in the context of wavier of the right to compel arbitration normally means some impairment of the other party's ability to participate in arbitration." *Groom v. Health Net,* 82 Cal.App.4th 1189, 1197, 98 Cal.Rptr.2d 836 (2000). Indeed, the mere expense of responding to motions or other preliminary pleadings filed in court is not the type of prejudice that bars a belated petition to compel arbitration. *Id.* The California Supreme Court has stressed the "significance of the presence or absence of prejudice." *Christensen,* 33 Cal.3d at 782 (internal quotation and citation omitted).

Likewise, in the Second Circuit, where this case originated, "[w]aiver of the right to compel arbitration due to participation in litigation may be found only when prejudice to the other party is demonstrated." *Rush v. Oppenheimer & Co.*, 779 F.2d 885, 887 (2d Cir. 1985); *see also Thyssen, Inc. v. Calypso Shipping Corp.*, 310 F.3d 102, 105 (2d Cir. 2002) (per curiam) ("The key to a waiver analysis is prejudice."); *In re Crysen/Montenay Energy Co.*, 226 F.3d 160, 162-63 (2d Cir. 2000) ("Prejudice as defined by our cases refers to the inherent unfairness—in terms of delay, expense, or damage to a party's legal position—that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue."). There are two types of prejudice: substantive prejudice and prejudice due to excessive cost and delay. Of importance, "[p]rejudice is not presumed based on the timing of [an] arbitration demand and [ ]

- 13 -

participation in litigation[.]" *Nat'l Union Fire Ins. Co. of Pittsburgh, P.A. v. NCR Corp.*, 376 Fed. Appx. 70, 72 (2d Cir. 2010).

Here, when the Saint Agnes factors are balanced, Defendants fail to overcome the heavy burden necessary to show waiver.

On the <u>first</u> factor (party's actions are inconsistent with the right to arbitrate), Lemberg Law acknowledges that the case has been pending for a year. However, it can hardly be said that Lemberg Law took any action that is *inconsistent* with the right to arbitrate. In fact, the Motion to Dismiss has not been adjudicated, and Lemberg Law has not even had a chance to raise arbitration as an affirmative defense, as would be its right. Even then, a failure to raise an arbitration agreement as an affirmative defense would be binding waiver of the right to arbitrate. *Thyssen, Inc. v. Calypso Shipping Corp.*, 310 F.3d 102, 105–106 (2d Cir. 2002). Absent prejudice to the non-moving party, an affirmative defense may be asserted for the first time in a motion, as done here. *Ledo Fin. Corp. v. Summers*, 122 F.3d 825, 827 (9th Cir.1997). Thus, the first factor points in against the finding of waiver.

The <u>second</u> factor (whether the litigation machinery has been substantially invoked) is neutral. The case has been pending for over a year, and fact and expert discovery has been completed. However, no dispositive motions have been decided; the issues have not been joined; the case has not been set for trial; and no discovery that would not be available in arbitration has been conducted.[6] Indeed, the Court has previously held that this level of litigation practice does not amount to waiver. *See Palmer v. Omni Hotel Mgmt. Corp.*, 2016 WL 816017, at *4 (S.D. Cal., Mar. 1, 2016) ("the court finds that his litigation activity, which includes opposing a motion

---

[6] Standard Arbitration Rules allow for document discovery (Rule 16.2) and depositions 16.2(d) (one deposition per side), and expert discovery (Rule 20). *See* https://www.jamsadr.com/rules-comprehensive-arbitration/.

to transfer venue, engaging in written discovery related to class certification, and taking a deposition, does not rise to the level of waiver"). Thus, Defendants cannot show any prejudice on account of the discovery that has been completed, as it can all be used in arbitration.

The third factor (whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay) points against the finding of waiver. As the transferor court said, no trial date has been scheduled here. (Doc. No. 97 at p. 15). In addition, there has been no delay in seeking arbitration, because Lemberg Law has not yet interposed its affirmative defenses. Thus, this factor points in favor of arbitration. Indeed, the timing of this motion no more warrants a finding of waiver than the timing in *Palmer*, where this Court found that "given that this case is in its early stages of litigation, the court is not convinced that arbitration will result in an unreasonable delay[.]" 2016 WL 816017, at *4.

The fourth factor (whether a party seeking arbitration filed a claim without asking for a stay of the proceedings) points in favor of waiver. Clearly Lemberg Law filed suit voluntarily.

The fifth factor (whether important intervening steps, e.g., taking advantage of judicial discovery procedures not available in arbitration has taken place) points against waiver. All discovery in this case would be available in arbitration, and neither Defendant was prejudiced in any way, shape or form. *See Palmer*, 2016 WL 816017, at *4 ("the deposition and the class-related discovery will obviate the need for the same in arbitration proceedings, and therefore do not constitute wasted effort or costs"). Moreover, the case was transferred to this District on the premise that percipient witnesses reside in California. The participation of these witnesses in arbitration would be substantially easier because they could testify remotely or by telephone rather than travelling, at their own expense, to San Diego.

- 15 -

Finally, the <u>sixth</u> factor (whether the delay affected, misled, or prejudiced the opposing party) points against waiver.  The expense and delay attendant to the litigation activities in this case is as insignificant as in *Rush*, where the court found that "it is beyond question that defendants' delay in seeking arbitration during approximately eight months of pretrial proceedings is insufficient by itself to constitute a waiver of the right to arbitrate." 779 F.2d 885, 887; *see also Palmer*, 2016 WL 816017, at *4 ("Defendant's costs incurred as a result of its removal and motion to transfer venue do not rise to such a level as to constitute significant prejudice and a waiver of Plaintiff's arbitration rights."); *Quevedo v. Macy's, Inc.*, 798 F. Supp. 2d 1122, 1131 (C.D. Cal. 2011) (finding no waiver where defendant had "not invoked the litigation machinery beyond the minimum required to defend against the suit," despite the fact that "some discovery ha[d] occurred," and the court had already "entertained a motion to dismiss by Defendants and a motion for class certification by Plaintiff").  The vast majority of the delays here are directly attributable to Defendants' multiple extension requests and inability to formulate their pleadings, not to any actions on Lemberg Law's part.  It took Defendants six (6) months to interpose an Answer and Counterclaim, and even now that pleading remains subject to a motion to dismiss that Defendants have *yet to oppose*.

In sum, nothing that transpired in the case to date was so extensive that it prejudices Defendants to the point where they can overcome the heavy burden of proof needed to show waiver." *See McNamara v. Royal Bank of Scotland*, 2012 WL 5392181, at *5.  Aside from legal fees (which she herself notes is not considered prejudice), Ms. Hussin has not shown prejudice such that would bar arbitration of this matter.  Simply put, Ms. Hussin has failed to sustain the burden of proof required in either the Ninth or Second Circuit.

- 16 -

D.  **Hussin Law Defaulted on the Motion and Must Be Compelled to Arbitrate**

Hussin Law, a third-party beneficiary under the Agreement, failed to oppose the Motion to Compel in any respect.  Uncontroverted evidence establishes that, after December 31, 2013, Ms. Hussin requested that all money be paid to her law firm, Hussin Law.  Thereafter, Lemberg Law sent 54 checks in the total amount of $188,680.89 to Hussin Law, with the last cashed check showing in Lemberg Law's system on May 4, 2014. *See* Doc. No. 110 at ¶ 9; *see also Metalclad Corp. v. Ventana Envt'l. Org. P'ship*, 109 Cal.App.4th 1705, 1717, 1 Cal.Rptr.3d 328 (2003) (compelling arbitration where non-signatory accepted benefits under the contract – "he who takes the benefit of a contract must bear the burden").

Hussin Law also asserted counterclaims against Lemberg Law based on the Agreement. (Doc. No. 57).  It therefore must be compelled to arbitrate. *Lucas v. Hertz Corp.*, 2012 WL 2367617, at *1002 (N.D. Cal., June 21, 2012) (arbitration compelled under equitable estoppel principles where plaintiff received benefits from Hertz under the car rental contract, and all of the plaintiff's claims against Hertz rested on the terms of that contract); *Amisil Holdings Ltd. v. Clarium Capital Mgmt.*, 622 F.Supp.2d 825, 839 (N.D. Cal. 2007) (compelling arbitration where unless the non-signatory is compelled to arbitrate, arbitration proceedings between the two signatories would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted).  Thus, having defaulted on the motion Hussin Law must now be compelled to arbitrate.

E.  **Purported Bias of the Neutral**

Ms. Hussin claims that Mark Dubois, Esq., the neutral whom she chose, is biased in favor of Lemberg Law. (Doc. No. 120 at ¶ 15).  However, there may not be a better-equipped lawyer in the country to evaluate his own neutrality.  Attorney Dubois served for seven years as

- 17 -

Connecticut's first Chief Disciplinary Counsel, retiring in 2011.  He writes about and teaches

legal ethics.   He has served as an arbitrator, fact-finder and mediator, both for the Judicial

Branch and in private ADR proceedings.  He has been recognized as an expert and testified in

state and federal court.  Mr. Dubois was the President of the Connecticut Bar Association from

2014-2015.[7]  Once arbitration is compelled, Defendants would be fully within their rights to ask

Mr. Dubois for recusal and appointment of another arbitrator. *See e.g., Regnery Publishing, Inc.*

*v. Miniter*, 601 F.Supp.2d 192, 195 (D.D.C. 2009).

　　　　With regard to Ms. Hussin's contentions that she has already attempted to engage

Attorney Dubois in mediated discussions, the sum and substance of those discussions was

elicited at her deposition:

> Q. Did you have any discussion with Attorney Mark Dubois about it?
> A. The escrow, yes.
> Q. And what did you tell him?
> A. Dubois.
> Q. Dubois. What did you tell him?
> A. What did I tell him? I can't really remember. I told him that I'd escrowed the money.
> Q. Okay. Did you tell him --
> A. I think I told him, at some point, I was determined I didn't have a legal obligation to escrow the money.
> Q. That was a subsequent call?
> A. A what?
> Q. A subsequent call.
> A. Subsequent call?
> Q. Well, you told him once that you were escrowing money; did you later tell him you were not going to escrow money?
> 　　　MR. TASCHNER: Or was it in one conversation?
> A. I think it was just in one conversation.
> Q. Okay. So you told him you were escrowing, but you didn't think you had a legal obligation to do it?
> A. Yeah.
> Q. And what did he tell you?
> A. What did he tell me?
> Q. Yes.

---

[7] *See* http://www.geraghtybonnano.com/attorney-mark-dubois-new-london-ct.php.

A. That he thought I was going to get disbarred over it.
Q. Okay. And you disregarded that advice?
A. That was the other day.
Q. Okay. I'm talking about when you had this conversation about setting up the escrow. What --
A. Did I talk to Mark Dubois? I think I did. At one point, Lemberg had him call me. Yeah.
Q. And what did you tell him in that call?
A. I don't know. I don't know. Probably that I was escrowing the money.

In sum, Ms. Hussin's contention that arbitration should not be ordered because Mr. Dubois is not neutral, or has somehow declined to serve, does not serve as a basis for declining to order arbitration.  A motion to recuse can be made and adjudicated in arbitration.

## CONCLUSION

WHEREFORE, Plaintiff respectfully requests that this Court enter an order (1) staying all pending motions and proceedings, (2) directing parties to arbitration and/or alternative dispute resolution.

Respectfully submitted,

/s/ Jenny DeFrancisco
Jenny DeFrancisco, Esq.
CT Bar No.: 432383
LEMBERG LAW LLC
43 Danbury Road, 3rd Floor
Wilton, CT 06897
Telephone: (203) 653-2250
Facsimile: (203) 653-3424

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on July 7, 2016, a true and correct copy of the foregoing was served electronically by the District of Connecticut Electronic Document Filing System (ECF) and that the document is available on the ECF system.

/s/ Jenny DeFrancisco

Jenny DeFrancisco, Esq.

- 20 -